UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| SALLIE BINGHAM, an individual | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _3:24-cv-211-CRS_ |
| | ) | |
| KENTUCKY FOUNDATION FOR WOMEN, INC. | ) | |
| | ) | |
| | ) | |
| **Serve:  Sharon Larue** | ) | |
| **505 W. Ormsby Avenue** | ) | |
| **Louisville, Kentucky  40203** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HON. RUSSELL COLEMAN, in his official | ) | |
| capacity as the Attorney General of the | ) | |
| Commonwealth of Kentucky | ) | |
| | ) | |
| **Serve: Attorney General Russell Coleman** | ) | |
| **Office of the Attorney General** | ) | |
| **The Capitol, Suite 118** | ) | |
| **Frankfort, Kentucky 40601** | ) | |
| ***ServeTheCommonwealth@ky.gov*** | ) | |
| | ) | |
| Defendants. | ) | |

## **VERIFIED COMPLAINT**

*  *  *  *  *

Plaintiff Sallie Bingham, for her Verified Complaint against Defendants, Kentucky

Foundation for Women, Inc. and Russell Coleman, in his official capacity as the Attorney

General of the Commonwealth of Kentucky, states as follows:

**THE PARTIES**

1.     Plaintiff Sallie Bingham ("Plaintiff" or "Ms. Bingham") is a writer, teacher, feminist activist and a philanthropist who is a native of Louisville, Kentucky and a citizen of New Mexico.  *See Our People*, *Founder Sallie Bingham*, KFW.ORG, http://www.kfw.org/about/staff-and-board/ (last visited March 28, 2024).

2.     Defendant Kentucky Foundation for Women, Inc. ("KFW" or the "Foundation") is a non-profit corporation incorporated under the laws of the Commonwealth of Kentucky with its principal place of business at 505 W. Ormsby Ave., Louisville, Kentucky 40203.

3.     Defendant Russell Coleman is joined in his official capacity as the Attorney General of the Commonwealth of Kentucky in view of his authority under Kentucky law to regulate non-profit corporations.  *See generally* Ky. Rev. Stat. Ch. 273.

**JURISDICTION AND VENUE**

4.     Personal jurisdiction in this Court over the Foundation is proper because the Foundation is incorporated and has its principal place of business in Kentucky, and moreover, because this lawsuit relates to the Foundation's actions in Kentucky.

5.     Personal jurisdiction over Attorney General Coleman, in his official capacity, is proper because he is a citizen of Kentucky and the duly elected Attorney General of the Commonwealth of Kentucky.

6.     Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1332.  There is complete diversity of citizenship between Plaintiff and Defendants because this dispute: (1) arises between citizens of different states (Plaintiff is a citizen of New Mexico and the Foundation and Attorney General Coleman are citizens of Kentucky); and (2) the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorney fees, as shown herein.

7.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because the Foundation's principal place of business, the events giving rise to Plaintiff's claims, and the real property that is the subject of the action are all situated in Louisville, Kentucky.

## FACTUAL ALLEGATIONS

8.    Nearly four decades ago, on March 19, 1985, Ms. Bingham incorporated the Kentucky Foundation for Women as a Kentucky nonprofit corporation "to promote positive social change by supporting varied feminist expression in the arts." *See Our People*, *Founder Sallie Bingham*, KFW.ORG, http://www.kfw.org/about/staff-and-board/ (last visited March 28, 2024). The "Our People" section of the Foundation's website still dedicates an entire tab to Ms. Bingham as its founder. *Id.* The Sallie Bingham Award is awarded annually by the Foundation to recognize "Kentucky women who are leaders in changing the lives of women and girls across the state by supporting feminist expression in the arts." *See Sallie Bingham Award*, KFW.ORG, http://www.kfw.org/sallie-bingham-award/ (last visited March 28, 2024).

9.    Ms. Bingham has lent far more than just her name to the Foundation. Indeed, at the time of Ms. Bingham's initial contribution of ten million dollars ($10,000,000.00) to the Foundation, it represented the largest single endowment in the United States made specifically for the support of women in perpetuity. The Foundation was aware that Ms. Bingham made her significant financial contribution with the intention of furthering its mission, including specifically to provide retreats and residencies for women artists at Ms. Bingham's historic Wolf Pen Branch Mill Farm, in a remote section of eastern Jefferson County.

10.   Indeed, providing retreats and residencies for women artists at Wolf Pen Branch Mill Farm has always been central to the Foundation's mission. *See Our Mission*, KFW.ORG, http://www.kfw.org/about/ (last visited March 28, 2024); *Hopscotch House Retreats*, KFW.ORG, http://www.kfw.org/retreats-residencies/retreats/ (last visited March 28, 2024).

11.    On March 30, 1987, using funds contributed by Ms. Bingham with the known intention that they be used in part for the acquisition and continued maintenance of a home on Wolf Pen Branch Mill Farm for use in hosting retreats for women artists, the Foundation acquired approximately four acres of certain real property in Jefferson County located at 8221 Wolf Pen Branch Road, Louisville, Kentucky and known as "Hopscotch House." *See Thinking About KFW's Mission*, KFW.ORG, http://www.kfw.org/wp-content/uploads/2015/03/thinking-about-kfws-mission-hh.pdf/ (last visited March 28, 2024) (providing expressly that the Foundation carries out its mission through "Retreat and Residency Programs at Hopscotch House").

12.    Hopscotch House, which is located in the midst of Ms. Bingham's historic Wolf Pen Branch Mill Farm, "is a five-bedroom house [that] can accommodate up to 7 people overnight    . . . or up to 15 people for one day retreats." *See Hopscotch House Retreats*, KFW.ORG, http://www.kfw.org/retreats-residencies/retreats/ (last visited March 28, 2024).  The oldest parts of the renovated farmhouse date to 1848.  The Wolf Pen Branch Mill Farm property is protected in perpetuity by a conservation easement.

13.    The Foundation first used Hopscotch House for groups of women writers known as the "Wolf Pen Writer's Colony."  By 1990, three Wolf Pen Writers Colonies had been hosted at Hopscotch House, along with thirteen other events and retreats.  In the early 1990's, Hopscotch House became available year-round to women artists and groups.  As of 1991, Hopscotch House had been enjoyed by over 3,000 women since its acquisition, and quickly proved to be the Foundation's "crown jewel."

14.    On April 9, 1996, because of the Foundation's success in utilizing Hopscotch House for retreats and in reliance on its continued plans to do so, Ms. Bingham contributed approximately six acres of additional real property at Wolf Pen Branch Mill Farm surrounding

Hopscotch House (the "Additional Real Property") to the Foundation for the intended purpose of further promoting its repeatedly-stated mission of hosting retreats for women artists, and a tenant house for the use of a full-time resident manager for Hopscotch House.

15.     The Foundation was well aware that Ms. Bingham contributed the Additional Real Property on Wolf Pen Branch Mill Farm for this purpose only.

16.     Indeed, Ms. Bingham memorialized in her "Statement of a Vision for The Kentucky Foundation of Women" that:

> As for Hopscotch House, the existence of a beautiful rural house, out of the financial reach of nearly all women, which is reserved for their use, their recreation, rest and education, is an important corollary to the Foundation's work.  Creativity demands that women be allowed to retreat, at times, from their world and their obligations.  ***Hopscotch provides the setting for such retreats***.

*Id.*  (Emphasis added).

17.     Moreover, the Foundation's website still provides presently that:

> KFW's Retreat Program offers retreats, free of cost ***at Hopscotch House*** for artists, activists, and allies who live and work in Kentucky and whose goals are to create art, gain a deeper understanding of feminism, and strengthen their understanding of their art and social change goals.  The program brings together artists, activists, and allies in a feminist space located on 10 acres of land.

*See Hopscotch House Retreats*, KFW.ORG, http://www.kfw.org/retreats-residencies/retreats/ (last visited March 28, 2024) (emphasis added).

18.     In addition, in 2006, the Foundation began hosting a successful summer residency program at Hopscotch House.  *See Residency Programs*, KFW.ORG, http://www.kfw.org/retreats-residencies/residencies/ (last visited March 28, 2024).  The Foundation recognizes that its "Summer Residency Program at Hopscotch House has fostered many of Kentucky's most diverse feminist social change artists and art activists," and that "[b]y supporting individual and

collective artistic development with a focus on social impact, the Summer Residency Program has been an important component of the growing and inclusive feminist social change movement in Kentucky." *Id.*

19.    The "Our Mission" page of the Foundation's website further promotes specifically that "[r]etreats and residencies *at Hopscotch* provide time and space for feminist social change artists, activists and allies to explore new ideas and artistic expressions, deepen understanding of feminism and advance creative change." *See Our Mission*, KFW.ORG, http://www.kfw.org/about/ (last visited March 28, 2024) (emphasis added).

20.    Over the past three decades, countless constituents of the Foundation have offered testimonials indicating that Hopscotch House was a critical component of their development as female artists, and serves as an integral part of the Foundation's mission.

21.    In mid-2023, the Foundation solicited yet another large financial contribution from Ms. Bingham to build a massive addition to Hopscotch House.  Ms. Bingham declined to contribute additional funds for this purpose given that, upon information and belief, the Foundation already has approximately sixteen million dollars ($16,000,000.00) in assets at its disposal, nearly all of which are available as a result of Ms. Bingham's past contributions to the Foundation.

22.    Ms. Bingham further indicated to the Foundation that she objected to any closure or sale of Hopscotch House – which would violate their mutual understanding that Hopscotch House and the Additional Real Property would be used permanently as a women's retreat center consistent with the Foundation's publicly-stated mission.  Ms. Bingham proposed that at minimum, and consistent with her stated intentions, before any sale of Hopscotch House and/or the Additional Real Property, a conservation easement should be imposed on the property at her

expense, expressly prohibiting both the razing of the current structures and the building of new structures.

23.    Instead, on January 11, 2024, the Foundation announced via its website that "[r]etreats at Hopscotch House have been discontinued due to lack of support for our renovation plan that was accessible, sustainable, relevant to young artists, and inclusive of diverse generations to come.  In addition, KFW has a responsibility to maintain a fair and equitable distribution of funds across Kentucky."  *See KFW Visioning Announcement*, KFW.ORG, http://www.kfw.org/feminist-blog/23827/ (last visited March 28, 2024).

24.     However, nothing in the Foundation's mission or vision statements or other foundational writings supports the existence of any such purported obligation.  To the contrary, all of the sources identified above and others repeatedly describe retreats and residencies at Hopscotch House as a critical component of the Foundation's charitable mission.

25.    On or about March 15, 2024, notwithstanding Ms. Bingham's repeated objections, and in violation of the parties' mutual agreement regarding the intended use of Ms. Bingham's funds and the Additional Real Property, the Foundation listed Hopscotch House and the Additional Real Property contributed by Ms. Bingham for sale at an asking price of 2.75 million dollars ($2,750,000.00).

26.    The Foundation has further declined to account to Ms. Bingham for certain artwork, books and other artifacts contributed by Ms. Bingham for use at Hopscotch House that appear to have been removed from its premises.

## CLAIMS FOR RELIEF

## COUNT I: Breach of Contract

27.    Ms. Bingham realleges the statements made in Paragraphs 1 through 26 above.

28.     A mutual agreement exists between Ms. Bingham and the Foundation as to the intended use of funds contributed by Ms. Bingham for the acquisition and continued maintenance of Hopscotch House and her additional contribution of the Additional Real Property to the Foundation, namely, that said assets contributed by Ms. Bingham would be used to host retreats and residencies for women artists.

29.     The Foundation has breached its agreement with Ms. Bingham by ceasing to use Hopscotch House and the Additional Real Property to host retreats and residencies for women artists, and instead, attempting to sell these assets acquired through Ms. Bingham's generosity for its own financial gain and in violation of its agreement with Ms. Bingham in accepting such assets.

30.     The Foundation has further breached its agreement with Ms. Bingham by attempting to sell such real property without any protections against its future development.

31.     As a result of the Foundation's breaches of its agreement, Ms. Bingham is entitled to specific performance in the form of an order requiring the Foundation to continue to use Hopscotch House and the Additional Real Property for the purpose of hosting retreats and residences for women artists at Wolf Pen Branch Mill Farm consistent with the parties' agreement and the Foundation's stated mission.

32.     In the alternative, as a result of the Foundation's breaches of its agreement, Ms. Bingham is entitled to entry of an order vesting title to Hopscotch House and the Additional Real Property in her name or in the name of a Kentucky charity of her choosing, as well as other damages to be proved at trial.

**COUNT II: Promissory Estoppel**

33.     Ms. Bingham realleges the statements made in Paragraphs 1 through 32 above.

34.    Ms. Bingham's contributions of assets to the Foundation, including the funds used to acquire Hopscotch House and her contribution of the Additional Real Property, were premised on the Foundation's promises that such assets would be used for the acquisition and continued maintenance of Hopscotch House for the purpose of hosting retreats and residencies for women artists at Wolf Pen Branch Mill Farm.

35.    The Foundation's promises induced Ms. Bingham to contribute funds and the Additional Real Property to the Foundation.

36.    The Foundation's promises are binding upon it and should be enforced in the interest of justice.

37.    Ms. Bingham is entitled to a judgment requiring the Foundation to continue to use Hopscotch House and the Additional Real Property for the purpose of hosting retreats and residences for women artists at Wolf Pen Branch Mill Farm, consistent with the Foundation's stated mission.

## COUNT III: Unjust Enrichment

38.    Ms. Bingham realleges the statements made in Paragraphs 1 through 37 above.

39.    Ms. Bingham conferred numerous benefits upon the Foundation at her expense, including substantial contributions of funds to be used for the acquisition and continued maintenance of Hopscotch House, as well as her separate contribution of the Additional Real Property to the Foundation.

40.    Ms. Bingham conferred these benefits with the intention that they would be used by the Foundation for the purpose of hosting retreats and residences for women artists at Wolf Pen Branch Mill Farm, consistent with the Foundation's stated mission.

41.    There was a resulting appreciation of such benefits by the Foundation.

42.    It would be inequitable for the Foundation to retain the benefits conferred by Ms. Bingham contrary to her intended purpose, and for its own financial gain.

43.    As result, the Court should impose a constructive trust over the proceeds of any sale of Hopscotch House and the Additional Real Property for the benefit of Ms. Bingham.

## COUNT IV: Accounting

44.    Ms. Bingham realleges the statements made in Paragraphs 1 through 43 above.

45.    The Foundation solicited millions of dollars in donations as well as real property from Ms. Bingham with representations and assurances that they would be used for the purpose of hosting retreats and residences for women artists at Wolf Pen Branch Mill Farm, consistent with the Foundation's stated mission.

46.    As set forth above, contrary to the purpose for which Ms. Bingham made her contributions to the Foundation, the Foundation has ceased using Hopscotch House and the Additional Real Property to host retreats and residences for women artists.

47.    Ms. Bingham is unable to ascertain her interest in the use, allocation or distribution of the Foundation's assets without an accounting.

48.    Ms. Bingham is entitled to an accounting of her contributions to the Foundation, including the use of all funds and property that she contributed.

## PRAYER FOR RELIEF

Accordingly, Ms. Bingham prays for judgment against the Foundation as follows:

1.    For an order compelling specific performance of the Foundation's contractual promises, including, without limitation:

a.    An order enjoining the Foundation from selling or listing Hopscotch House and the Additional Real Property for sale, and requiring their continued utilization as a

retreat center for women artists, consistent with Ms. Bingham's intent in contributing such assets to the Foundation, the parties' agreement, and the Foundation's repeatedly-stated mission; and

      b.      An order requiring the Foundation to utilize its substantial financial assets, as necessary, for the complete restoration and the continued maintenance and operation of Hopscotch House as a retreat center for women artists, consistent with Ms. Bingham's intent in contributing such assets to the Foundation.

2.      Injunctive relief consistent with and to effectuate the above.

3.      For an order vesting title to Hopscotch House and the Additional Real Property in Ms. Bingham's name or in the name of a Kentucky charity of her choosing.

4.      For imposition of a constructive trust for the benefit of Ms. Bingham over the proceeds of any sale of Hopscotch House and the Additional Real Property.

5.      For an accounting of all funds and property donated by Ms. Bingham to the Foundation, and of assets funded by same, and of the Foundation's use of the same;

6.      For damages to be proven at trial, which Ms. Bingham will redirect to another non-profit or charity of her choice;

7.      For an award of Ms. Bingham's costs expended herein, including an award of her reasonable attorney's fees;

8.      For pre-judgment and post-judgment interest at the maximum legal rate;

9.      That each named Defendant be required to enter its appearance and set forth its claim, if any, herein; and

10.      For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

DENTONS BINGHAM GREENEBAUM LLP
Jonathan T. Salomon
Janet P. Jakubowicz
John R. Cummins

*/s/ Jon Salomon*
PNC Tower, Suite 3500
101 S. Fifth Street
Louisville, KY 40202-3120
Telephone:  (502) 589-4200
jon.salomon@dentons.com
janet.jakubowicz@dentons.com
john.cummins@dentons.com

*Counsel for Plaintiff Sallie Bingham*

## VERIFICATION

I, Sallie Bingham, declare as follows:

1.  I am the Plaintiff in the present case, a citizen of the United States of America, and a resident of the State of New Mexico.

2.  If called upon to testify, I would testify competently as to the matters set forth in the foregoing *Verified Complaint*.

3.  I verify under penalty of perjury under the laws of the United States of America that the factual statements in the foregoing *Verified Complaint* are true and correct to the best of my knowledge and understanding.


Executed on March 28, 2024.


Sallie Bingham