UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:24-CV-211-CRS

SALLIE BINGHAM                                                    PLAINTIFF

v.

KENTUCKY FOUNDATION FOR WOMEN, INC., *et al*                DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court on plaintiff Sallie Bingham's motion to dismiss all counterclaims filed by the defendant, the Kentucky Foundation for Women, Inc. (the "Foundation"). The Foundation has alleged seven counterclaims against Bingham: (1) breach of fiduciary duty, based on allegations of self-dealing; (2) slander of title, based on Bingham's having filed a *lis pendens* against its property; (3) abuse of process, also based on the *lis pendens* as well as the Verified Complaint; (4) defamation, based on alleged disparagement by Bingham of the Foundation's easement rights; (5) slander of title, based on the same alleged disparagement; (6) defamation, based on alleged statements by Bingham about the Foundation's mismanagement of assets; and (7) private nuisance, based on Bingham's alleged interference with the Foundation's use and enjoyment of its property. Bingham has moved to dismiss pursuant to FED. R. CIV. P. 12(b)(6). Thus, the question before the Court is whether the Foundation has sufficiently pleaded each of its counterclaims. The answer is "yes" with respect to part of Count 2, Count 5, and Count 6; thus, these counterclaims will not be dismissed. The answer is "no" with respect to Counts 1, 3, 4, 7 and part of Count 2. Those counterclaims will be dismissed.

## BACKGROUND

The crux of the parties' dispute is this: the Foundation contends that it owns certain realty free and clear such that it may sell that property to anyone it chooses; Bingham contends that the

opposite is true. She alleges that the Foundation used money she donated to buy part of the realty at issue and that she donated the rest of it on the condition that the real property "would be used permanently as a woman's retreat center . . . ." Verified Complaint, DN 1 at ¶ 22. Bingham alleges that she and the Foundation mutually agreed to this condition. *Id.* Apparently, this alleged agreement was a verbal one. The Foundation maintains that there is no such agreement. Counterclaim, DN 10 at ¶ 7 & ¶ 11. Nonetheless, Bingham has sued for breach of the alleged agreement based on the Foundation's having listed the realty for sale. Undaunted, the Foundation has countersued. It contends that Bingham made numerous extrajudicial attempts to obtain the realty at issue for the purpose of preventing a third-party sale and when those failed, she sued to get title to the realty. It is true that Bingham seeks a court "order vesting title" to the realty in her name or in the name of a charity of her choosing. Verified Complaint, DN 1, Prayer for Relief at ¶ 3. But why is she so very interested in preventing third-party ownership of the realty? According to the Foundation, she wants to "prevent it from being purchased by real estate developers and thus to protect her 'aesthetic' and 'ecological' interests in her surrounding Wolf Pen Mill Farm," a farm which she has put into a conservation easement. Counterclaim, DN 10 at ¶ 8; ¶ 31, respectively.

The disputed realty itself consists of land, a 5-bedroom residence known as Hopscotch House and a tenant house – all of which is located off Wolf Pen Branch Road in Louisville, Jefferson County, Kentucky (together, the "Real Property"). It appears that the Foundation bought Hopscotch House on March 30, 1987, using part of certain funds Bingham had donated. Bingham donated the funds two years earlier, at some time near March 15, 1985 (the date on which Bingham incorporated the Foundation). About ten years later, on April 9, 1996, Bingham gave the Foundation approximately 6 acres of adjacent land on which the tenant house is situated.

Historically, the Foundation has used the Real Property for women artists' retreats and residencies. However, according to the Foundation, Hopscotch House has become outdated and artists' interest in staying there has dropped precipitously. Thus, it "proposed a renovation and addition to Hopscotch House to reinvigorate interest among female Kentucky artists in Hopscotch House, bringing it into the modern era and making it more attractive to, and safer for, modern female artists." *Id.* at ¶ 24. The Foundation alleges that it "asked Bingham if she would be willing to donate funds for the project . . . ." and "Bingham initially agreed." *Id.* a ¶ 25. But later, Bingham "withdrew her funding." *Id.* Thus, the Foundation wants to sell the Real Property. So why not sell it to Bingham? According to the Foundation, the "self-dealing rules of Section 4941(a) of the Internal Revenue Code" forbid it. *Id.* at ¶ 34. In any event, it would appear that the parties' impasse has ultimately brought them before this Court.

Based on the alleged agreement for the Real Property's permanent use as an artists' retreat, Bingham has sued for breach of contract, promissory estoppel and unjust enrichment. She also seeks an accounting of her contributions to the Foundation. On the other hand, the Foundation seeks money damages based on allegations of Bingham's interference with its unfettered right to sell the Real Property. Her alleged interference consists of maliciously filing a *lis pendens*, slandering the Foundation's property rights, abuse of process, defamation, and private nuisance. The Foundation also seeks an order compelling Bingham to discharge her *lis pendens* and directing her to cease and desist from interfering with the Foundation's sale of the Real Property. The Foundation has also asserted a breach of fiduciary duty counterclaim. Bingham contends that none of the Foundation's counterclaims has been plausibly pleaded or they fail outright. Accordingly, she has moved to dismiss them all pursuant to FED. R. CIV. P. 12(b)(6). Upon review, the Court will dismiss Counts 1, 3, 4 and 7 of the Counterclaim. And, to the extent that Count 2 is based on

Bingham's Verified Complaint, the Court will dismiss it too. Bingham's Rule 12(b)(6) challenges to the remaining counterclaims are unavailing.

## LEGAL STANDARDS

A Rule 12(b)(6) motion tests the sufficiency of a complaint or counterclaim. To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be plausible, the "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted) (emphasis in original). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Id.* (citation omitted). In reviewing a Rule 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Also, the court must read the allegations "'as a whole.'" *Barton v. Neeley*, 114 F.4th 581, 587 (6th Cir. 2024) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 47 (2011)).

## ANALYSIS

### A. Failure to Plead Generally

Bingham has moved to dismiss all the counterclaims for failure plead plausible claims. Motion, DN 11-1 at 10-11 (citing *Ashcroft*, 556 U.S. 662; *Twombly*, 550 U.S. 544). As a result, she must prove that there is no plausible claim before the Court. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). Bingham has not done so. While Bingham contends that all the Foundation's counterclaims are too bare-bones to be

4

plausible, in this section of her motion, she never explains how or why any of them lack sufficient fact allegations. She simply states they do. Motion, DN 11-1 at 10-11. Such a skeletal argument does not suffice. *U.S. v. Fowler*, 819 F.3d 298, 309 (6th Cir. 2016) ("It is not sufficient for a party to mention a possible argument in a skeletal way, leaving the court to put flesh on its bones.") (cleaned up) (citation omitted).

## B. Breach of Fiduciary Duty – Count 1

In her complaint, Bingham avers that she and the Foundation have a "mutual understanding" that the Real Property "would be used permanently as women's retreat center." Verified Complaint, DN 1 at ¶ 22. Apparently, this is an unrecorded, verbal agreement. Nonetheless, Bigham has sued for breach of contract based on the Foundation's allegedly violating this agreement by listing the Real Property for sale. In effect, these averments state that the Foundation does not have free and clear title to the Real Property because it cannot alienate that property. Rather, according to Bingham, the Foundation agreed to keep the Real Property for use as a retreat and to provide residencies. *Id.* at ¶ 28.

The Foundation has denied the existence of any such "mutual agreement." At the same time, however, the Foundation alleges that if Bingham has successfully tied up Hopscotch House in this manner, doing so was a breach of her fiduciary duty to the Foundation. Counterclaim, DN 10 at ¶¶ 43-46. According to the Foundation, in her capacity as an executive director, Bingham used its money to buy Hopscotch House and, if her averments are true, to saddle the Foundation with realty it cannot sell. According to its allegations, this is no true benefit for the Foundation. Rather, the benefit is only to Bingham. For tying up the Foundation's property prevents its development and thereby protects Bingham's "'aesthetic' and 'ecological' interests in her surrounding Wolf Pen Mill Farm." Counterclaim, DN 10 at ¶ 8. The Foundation has also alleged that preventing development would increase the value of Bingham's farm:

> Bingham has made multiple attempts over the years to have [the Foundation] place the Hopscotch House into a conservation easement at [the Foundation's] expense, which would have increased the value of Bingham's surrounding farm.

*Id.* at ¶ 32.

The Court finds that, as pleaded, this claim is implausible. If such a mutual agreement exists, then the Foundation must have assented to being saddled with Hopscotch House in this manner and the benefit to Bingham would have been evident at the time of the agreement. It is true that Bingham has not alleged with whom she reached the purported mutual agreement, when it was reached, or that it was memorialized in any way. While these omissions may call Bingham's claims into question and provide some defenses, they do not give rise to a plausible, affirmative claim for breach of fiduciary duty. The agreement exists or it does not. Such an agreement is enforceable or it is not. Nonetheless, if the agreement exists, the Foundation had to have known about it. Accordingly, it is implausible to plead otherwise. For this reason, the Court will dismiss Count 1 of the Counterclaim.

## C. Slander of Title - Counts 2 and 5

"Slander of title" is a misnomer of sorts. The tort is not a subcategory of defamation and it protects interests in land other than ownership, *i.e.*, other than one's "title." To explain, slander of title is a type of injurious falsehood. *Ballard v. 1400 Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229, 235 (Ky. 2013) (quoting *Pond Place Partners, Inc. v. Poole,* 567 S.E.2d 881, 890-91 (S.C. Ct. App. 2002) (quoting RESTATEMENT (SECOND) OF TORTS § 624, cmt. a)). More particularly, it is an action "for injury to real property rights." *Id.* As such, the tort's crux is interference with the vendibility of land or a transferable interest in land.[1] Hence, a plaintiff must

---

[1] The tort protects a myriad of legal interests in land apart from ownership, including easement rights. RESTATEMENT (SECOND) OF TORTS § 624, cmt. c (1977) ("Any kind of legal protected interest in land . . . may be disparaged . . . . It may be a mortgage, lease, easement . . . .").

plead and prove special damages in the form of an inability to sell or diminution in market value. *Hardin Oil Co. v. Spencer*, 205 Ky. 842, 266 S.W. 654, 655 (1924) (addressing slander of leasehold interest). Also, for liability to attach, malice on the part of the defendant must be pleaded. Allegations of false statements known by the defendant to be false suffice. *Ideal Savings Loan & Bldg. Ass'n of Newport v. Blumberg*, 295 Ky. 858, 175 S.W.2d 1015, 1017 (1943).

Accordingly, where the plaintiff pleaded that defendants (1) knew the plaintiff had easement rights in a shared wall, yet (2) knowingly lied by telling a potential buyer that there was no such right and (3) the lie caused the plaintiff to lose a sale, the plaintiff stated a claim for slander of title. *Id.* Similarly, a maliciously filed *lis pendens* can give rise to a slander of title claim where special damages are alleged. *Ballard*, 430 S.W.2d 229. Here, the Foundation has alleged two slander of title claims based on such allegations: (1) Bingham knowingly and maliciously filed a *lis pendens* against the Real Property and (2) Bingham knowingly and maliciously lied about the Foundation's easement rights in Sallie Road. The Foundation has alleged that these derogatory publications by Bingham caused it to lose sales and diminished the market value of its property. Counterclaim, DN 10 at ¶ 52 & ¶ 66. Despite these allegations, Bingham contends that the Foundation's claims must be dismissed.

First, Bingham maintains that her *lis pendens* does not contain a substantively false statement and therefore cannot give rise to slander of title. However, the *Ballard* case explains that the filing of a *lis pendens*, if done maliciously, gives rise to slander of title. Second, Bingham argues that slander of title protects only disparaging statements about ownership of property such that a lie about an easement does not suffice. Again, Kentucky law is to the contrary as exemplified by the *Ideal Savings* case. Next, Bingham argues that the alleged disparagement of the Foundation's easement rights is not actionable because it was not made to a third party. True, there

must be publication to a third party. However, there is an exception to this general rule. When the publisher knows or should reasonably expect that her derogatory statement will reach a third party, she may yet be liable. Finally, Bingham contends that the Foundation has failed to plead special damages with respect to both claims, and failed to plead malice with respect to its claim based on its easement rights. The Counterclaim belies these contentions. For these reasons, the Court will deny Bingham's motion to dismiss these claims.

### 1. Special Damages

Bingham contends that the Foundation has failed to plead special damages with specificity as required by FED. R. CIV. P. 9(g). Motion, DN 11 at 14. Rule 9(g) does not require specificity in the sense of stating a measure of damages. Instead, it suffices for a "counter-plaintiff . . . to merely state the nature of damages and allow the damage issue to be further delineated by pretrial discovery." *Time Warner Cable Midwest LLC v. Pennyrile Rural Elec. Coop. Corp.*, 2015 WL 4464105, at *6 (W.D. Ky. Jul. 21, 2015) (citation omitted). Here, the Foundation has sufficiently pleaded the nature of the special damages necessary to a slander of title claim.

Under Kentucky law, special damages for a slander of title claim include losses of sales and the diminution of a property's fair market value. *Bonnie Braes Farms, Inc. v. Robinson,* 598 S.W.2d 765, 766 (Ky. App. 1980). It is clear that the Counterclaim alleges such special damages and that Bingham's disparagement caused those damages:

> ***Bingham's false statements have*** harmed [the Foundation's] reputation, ***prevented [the Foundation] from*** showing and ***selling its property***, caused potential buyers to doubt [its] right to the properties and to be dissuaded from viewing the properties, ***and caused the property to lose value***.

Counterclaim at ¶ 52 & ¶ 66, DN 10 at 17, 19 (emphasis added).

### 2. Disparagement of Easement Rights - Count 5

The Foundation alleges that Bingham disparaged its easement rights by lying about its invitees' and guests' rights to use Sallie Road:

> On April 9, 1996, Bingham . . . granted an easement to [the Foundation] to use a then-private road marked as "Sallie Road" . . . .
>
> The Easement states that the "easement shall be for the benefit of said owners or occupants, their guests and invitees."
>
> . . . In 2024, Bingham personally called the real estate agent who was listing Hopscotch House for [the Foundation] and maliciously informed her that she did not have permission to drive over the easement . . . despite knowing full well that [the Foundation's] easement permitted [it] to invite the agent to use the easement. This has caused the agent to cancel a showing of the property and prevented [the Foundation] from showing and selling the property. It has also caused potential buyers to doubt [the Foundation's] right to the easement, to be dissuaded from viewing the property, and the property to lose value.

Counterclaim, DN 10 at ¶ 9, ¶ 12, and ¶ 39.

Bingham asserts that these allegations fail to plead malice but does not explain why they fail to do so. Motion, DN 11-1 at 15-16. The Foundation has alleged that Bingham granted the easement, knew it existed, yet told the agent that she did not have the right to travel on Sallie Road. Contrary to Bingham's assertion, such allegations sufficiently plead malice. *Ideal Savings*, 175 S.W.2d at 1017 (allegations that defendants knew plaintiff had easement rights and knowingly lied by stating none existed sufficiently pleaded malice). Next, Bingham insists the claim fails because the disparagement is about easement rights and not title to real property. Reply, DN 20 at 20. This argument is equally unavailing. *Ideal Savings,* 175 S.W.2d at 1017 (disparaging easement rights is actionable); *Ballard*, 430 S.W.3d at 236 (slander of title is action for injury to real property rights); *see also Hardin Oil*, 266 S.W. 654 (disparagement of leasehold rights).

Finally, Bingham contends that the claim is not actionable because the disparaging statement was not made to a third party. While publication to a third party is necessary to interfere

with the vendibility of land, that element is met when the publisher knows or has reason to know that her statement is likely to reach third parties. The Restatement provides this illustration:

> A, with knowledge that his statement is false, tells B, whose husband is negotiating for the purchase of C's farm which is offered clear of incumbrance, that the farm is mortgaged for what is now its full value. B, as she might reasonably be expected to do, repeats this to her husband, who withdraws his offer for the farm. A is subject to liability to C.

RESTATEMENT (SECOND) OF TORTS § 631 (1977). Nonetheless, Bingham relies on this Court's prior decision in a defamation case for her contention that publication to the Foundation's agent – which is no more than publication to the Foundation itself – is fatal to its claim. Motion, DN 11-1 at 16 (citing *Hickman v. State Farm Prop. & Cas. Ins. Co.*, 2017 WL 5892212 (W.D. Ky. Nov. 28, 2017). But Kentucky law recognizes the same exception to the general rule in defamation cases. *Fordson Coal Co. v. Carter*, 269 Ky. 805, 108 S.W.2d 1007, 1008-09 (1937) (libelous letter sent to plaintiff is actionable publication if defendant knew some third person would read it).

Here, the Foundation has alleged that Bingham lied to its real estate agent which resulted in the agent's repetition of that lie to potential buyers which resulted in lost sales and a diminished market value. When the Counterclaim is read as a whole, the reasonable inference is that Bingham meant to interfere with sales, *i.e.*, she expected the agent to repeat this information. Indeed, the allegations of easement disparagement describe one event in a series which the Foundation alleges comprise Bingham's intentional efforts to prevent it from selling. Counterclaim, DN 10 at ¶¶ 21-42. Moreover, the Foundation argues that its agent had a duty to repeat it – an argument that Bingham does not address much less dispel.

### 3. The *Lis Pendens* – Count 2

A notice of *lis pendens* is recorded in the chain of title to real property. It warns would-be buyers that the listed property is the subject matter of litigation and should they acquire any interest while the litigation is on-going, they take subject to the litigation's outcome. *Greene v. McFarland*,

43 S.W.3d 258, 260 (Ky. 2001) (citing BLACK'S LAW DICTIONARY 943 (7th Ed. 1999)). Naturally, such a filing prevents sales. *Ballard*, 430 S.W.3d at 239 (*lis pendens* ties up property). For this reason, in Kentucky, people who file a *lis pendens* with malice, *i.e.,* without justification, can be held liable for slander of title. *Id.* To state this claim, a plaintiff must plead special damages. *Bonnie Braes Farms*, 598 S.W.2d at 767.

On April 1, 2024, by counsel, Bigham filed a Notice of Lis Pendens in the public record for Jefferson County, Kentucky. *See* DN 11-2. The Notice lists the case style for this action and states that "[t]he aforementioned civil action involves or affects the Kentucky Foundation for Women Inc.'s right, title, interest in or claim to, certain real property located at 8221 Wolf Pen Branch Road, Louisville Kentucky 40059 . . . ." and "further involves or affects" "certain adjoining real property". *Id.* The Notice contains the legal description for both tracts of land, *i.e.*, the Real Property at issue in this case.

The Foundation alleges that Bingham maliciously filed this Notice. More specifically, the Foundation alleges that Bingham does not have a judgment, a legitimate claim to the Real Property, or a basis for her claim that it must be used permanently as a women's retreat. Counterclaim at ¶ 50 & ¶ 40, respectively, DN 10 at 9, 10. Instead, before she filed her *lis pendens*, Bingham "knew full well that [the Foundation] had clear title." *Id.* at ¶ 40. One can reasonably infer from these allegations the Foundation's theory of liability: Bingham does not have a good faith basis for her *lis pendens*. *Id.* Nevertheless, Bingham argues that these allegations are insufficient. She contends that because her *lis pendens* notice does not contain a substantively false statement, she cannot be liable for slander of title. Motion, DN 11-1 at 14. Kentucky law requires the opposite conclusion, however.

First, in Kentucky, a *lis pendens* need only describe the property, state the property owner's name and state that his, her or its real property is "involved or affected" by the listed piece of litigation. KRS 382.440. The statute does not require more, much less a substantive statement by the filer. Thus, simply parroting the statutory language, as Bingham has done, would cloak all filers with absolute immunity because the notices would never contain a false, substantive statement. This result would obtain for two reasons: (1) the language is couched in the alternative – "involved or affected" and (2) "involve" is an expansive term and can mean no more than there is a lawsuit which relates to the property. *U.S. v. Gould*, 30 F.4th 538, 545 (6th Cir. 2022) ("involve" is expansive; broadly it means relates closely). Yet, Kentucky law does not cloak *lis pendens* filers with absolute immunity. Instead, they enjoy only a qualified privilege. *Ballard*, 430 S.W.3d at 238.

Second, *Ballard* makes clear that the act of filing a *lis pendens* can be actionable. Patricia Ballard sued a condo association for slander of title based on its having filed a *lis pendens* against her property. The association argued that "***the filing*** of the *lis pendens* . . . enjoy[ed] the absolute privilege that is accorded to judicial proceedings." 430 S.W.2d at 238-39 (emphasis added). The Kentucky Supreme Court rejected that argument: "we conclude that ***the filing*** of a *lis pendens* is protected by a qualified privilege." *Id.* (emphasis added). Further, the Kentucky Supreme Court's rationale for adopting a qualified privilege also makes clear that the filing in the public record – when unfounded and malicious – is the disparaging communication:

> . . . ***the filing*** of a notice of *lis pendens* gives a creditor an opportunity to protect whatever interest he believes he may have . . . by preventing the property from being taken by a bona fide purchaser for value. . . . In holding a notice of *lis pendens* subject to a qualified privilege, the court is not placing any restraints on a creditor who in good faith wants to protect his potential legal interest, while at the same time allowing a landowner an opportunity to prove that she has been defamed and her property disparaged by the ***unfounded and malicious*** publication of another.

*Id.* at 239 (quoting and adopting reasoning of *Warren v . Bank of Marion*, 618 F. Supp. 317, 325 (W.D. Va. 1985)) (emphasis added). That is, it is the lack of a proper foundation for filing a *lis pendens* that is actionable.

Bingham argues that despite this rationale, there must be a substantively false communication in the *lis pendens* itself. She relies on *Halle v. Banner Indus. of N.E., Inc.*, 453 S.W.3d 179 (Ky. App. 2014) for this argument. *Halle* does not require such a conclusion. *Halle* did not concern a claim for slander of title. Rather, the case concerned, among other issues, the scope of the judicial statements privilege. *Id.* at 184-86. Specifically, the court addressed whether the judicial statements privilege applied not only to communications but also to conduct. The court held that it applied only to communications. *Id.* at 185. In reaching its holding, the court noted that privileges are narrowly construed and in *Ballard*, the court refused to expand the judicial statements privilege to conduct. Instead, in *Ballard*, the court "balanced the interests of the creditor and those of the landowner to be free from defamation and recourse when her property has been disparaged by the *'unfounded and malicious publication* of another.'" *Id.* (quoting *Ballard*, 430 S.W.2d at 239 (quoting *Warren*, 618 F. Supp. at 325)) (emphasis added). The "basis for the slander of title action . . . [was] the knowing and malicious *communication* of a false statement." *Id.* (citing *Ballard*, 430 S.W.3d at 238-39) (cleaned up). Of course, with respect to a *lis pendens*, the communication consists of a publication in the recorded chain of title. If that published communication is unfounded and malicious, it is actionable. The Foundation has sufficiently pleaded such a claim.

Lastly, Bingham contends that the Foundation has also based Count 2 on her Verified Complaint, a filing that cannot give rise to slander of title because statements in a judicial pleading are entitled to absolute immunity. Motion, DN 11-1 at 14-15 (citing *Rogers v. Luttrell*, 144 S.W.3d

84 (Ky. App. 2004)). On the one hand, this argument may parse the Foundation's allegations too closely. The Foundation has alleged that given the fact the *lis pendens* is based on the same falsities that underlie Bingham's complaint, the *lis pendens* itself constitutes an unfounded filing. Counterclaim at ¶ 51, DN 10 at 17 (Bingham knew that that the basis for her Complaint "and therefore the basis for the lis pendens" was false or at least made with reckless disregard for the truth). Stated another way, the *lis pendens* is not a founded, good faith filing. Accordingly, in its Response the Foundation focuses on the *lis pendens.*

On the other hand, the Foundation also states that Count 2 is based on both the Complaint and the *lis pendens.* Response, DN 16 at 7. The import of this statement is unclear, however, because it is couched in argument focused on the *lis pendens.* As well, when read as a whole, the Counterclaim clearly rests on the alleged lack of foundation for the *lis pendens.* Nevertheless, if the Foundation has pleaded that the Verified Complaint gives rise to a slander of title action, such a claim fails as a matter of law. The judicial statement privilege precludes the use of statements made in pleadings to sustain a cause of action. *Halle*, 453 S.W.3d at 184 (citing *Rogers*, 1444 S.W.3d at 843-44). This privilege attains even though "'it may, in some instances, afford an immunity to the . . . malignant slanderer.'" *Id.* (citation omitted). Thus, while unclear to the Court, to the extent Count 2 is based on the Verified Complaint, it will be dismissed.

### D. Abuse of Process – Count 3

The Foundation has alleged abuse of process based on the false statements in Bingham's Verified Complaint and based on the lack of a proper foundation for her *lis pendens*. Counterclaim, Count 3, DN 10 at ¶¶ 53-56. Bingham contends that this claim must be dismissed because (1) even if maliciously filed, a *lis pendens* cannot give rise to an abuse of process claim and (2) the Foundation has failed to allege any "'form of extortion' or coercion outside the formal use of process itself." Motion, DN 11-1 at 18 (citations omitted). The Court agrees.

14

Abuse of process is the wrongful employment of a judicial proceeding. The Kentucky Supreme Court "has succinctly described an abuse of process claim as the improper 'use of a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which that process is not designed . . . ." *Garcia v. Whitaker*, 400 S.W.3d 270, 276 (Ky. 2013) (quoting *Sprint Commun. Co., L.P. v. Leggett,* 307 S.W.3d 109, 113 (Ky. 2010) (citing RESTATEMENT (SECOND) OF TORTS § 682 (1977)) (cleaned up). "Asserting a meritless or vexatious claim or cause of action cannot alone constitute an abuse of process. The claim arises only where someone attempts to achieve an end through the use of the court's process that the court is unauthorized by law to order." *Stark v. Collins*, 2022 WL 2898482, at *4 (Ky. App. Jul. 22, 2022) (citing *Simpson v. Laytart*, 962 S.W.2d 392 (Ky. 1998)). "Examples of an abuse of process include an improper threat to continue the prosecution of an ongoing claim unless a concession is made on a collateral matter or the initiation of 'a legal action for an improper purpose (demanding a result not authorized by applicable law) after threatening to do so unless the unauthorized result is granted.'" *Scaife v. Perkins*, 2020 WL 864171, at *11 (Ky. App. Feb. 21, 2020) (quoting *Sprint*, 307 S.W.3d at 119). Absent such ulterior purpose allegations, a plaintiff fails to state a claim.

The Foundation's Counterclaim does not include such allegations of ulterior purpose with respect to Bingham's complaint. Rather, the Foundation has alleged no more than malevolent intentions of, and baseless allegations by, Bingham. Counterclaim, DN 10 at ¶ 56. Even if Bingham means to vex the Foundation and brought this action without legitimate cause, a claim for abuse of process does not lie. *Garcia*, 400 S.W.3d at 276; *Stark*, 2022 WL 2898482 at *4; *Scaife,* 2020 WL 864171 at *11. As for the claim's being based on Bingham's *lis pendens*, it likewise fails. The filing of a *lis pendens* does not involve a judicial proceeding and therefore cannot sustain a claim for abuse of process. *Bonnie Braes Farms,* 598 S.W.2d at 765.

### E. Defamation – Counts 4 and 6

The tort of defamation protects the right to enjoy one's reputation uninjured by false and disparaging attacks. The Foundation alleges that Bingham defamed it (1) when she lied about its easement rights, Count 4 and (2) when she stated in "articles and internet postings" that the Foundation had mismanaged Hopscotch House and its endowment, Count 6.

#### 1. Count 4 – The Easement Lie

For its first defamation claim, Count 4, the Foundation has alleged the following:

> 59. [The Foundation] incorporates and realleges Paragraphs 1 through 58 of the Counterclaim herein.

> 60. Bingham intentionally made an unprivileged and false statement to [the Foundation's] real estate agent that she did not have permission to use [the Foundation's] easement.

> 61. Bingham did so maliciously, knowing the statement to be false or at least with reckless disregard for its veracity.

> 62. Bingham's statement has harmed [the Foundation's] reputation, prevented [the Foundation] from showing and selling its property, caused potential buyers to doubt [the Foundation's] right to the properties and to be dissuaded from viewing the properties, and caused the property to lose value.

Counterclaim, DN 10 at 18. Bingham attacks this claim on the same ground that she attacked Count 2 and the argument fails for the same reason it failed with respect to Count 2. Bingham contends that Count 4 must be dismissed for lack of publication to a third party. Motion, DN 11-1 at 20. To the contrary, Kentucky law provides that one can be liable for defamation if she has reason to believe that her defamatory statement is likely to reach third parties even though the statement was not directly published to a third party. *Fordson Coal*, 108 S.W.2d at 1008-09. Again, the Foundation has alleged that Bingham called its realtor for the purpose of interfering with sales and did so by telling her that she did not have permission to use Sallie Road. The reasonable inference is that Bingham expected the realtor to repeat her assertion to potential buyers.

16

Second, Bingham contends that Count 4 fails because the Foundation "has not adequately specified the content of any allegedly defamatory statement in a manner consistent with federal pleading standards." Motion, DN 11-1 at 19. To the contrary, the Foundation has alleged that Bingham knew full well that the Foundation's guests and invitees could use Sallie Road and lied by telling its realtor there was no such permission. Counterclaim, DN at ¶ 39.

Third, Bingham argues that the claim fails because the statement concerned an easement right and not "any reputational interest" of the Foundation. Motion, DN 11-1 at 20. The Court agrees. The alleged statement about the use of Sallie Road is not one against the Foundation's reputation. Nor does the alleged statement contain an imputation of fraud, deceit, dishonesty or other reprehensible conduct. *White v. Hanks*, 255 S.W.2d 602, 603 (Ky. 1953). The words convey no more than Sallie Road is private and the Foundation does not have permission to use it. So divorced from innuendo and explanation, the Court cannot say that the alleged statement would *per se* hold the Foundation to hatred, ridicule or disgrace. That is, the alleged statement does not constitute defamation *per se*.

However, in Kentucky there are two types of defamation. One may also maintain an action for defamation *per quod*. That claim does not require that the words be actionable on their face. Rather,

> . . . there are two classes of actionable words: those slanderous per se, which are presumed by law actually and necessarily to damage the person about whom they are spoken, and those classified as actionable per quod, which on their face are not actionable per se but only in consequence of extrinsic facts show the damages which resulted to the slandered party.

*Elkins v. Roberts*, 242 S.W.2d 994, 995 (Ky. 1951). Stated another way, in a defamation *per quod* case, the words "are actionable in consequence of extrinsic facts showing the circumstances under which they were written or spoken and the damages resulting therefrom." *Digest Publ. Co. v. Perry Pub. Co.*, 284 S.W.2d 832, 834 (Ky. 1955).

17

Here, the Foundation has pleaded pecuniary loss in the form of lost sales and diminished market value of its property caused by Bingham's defamatory remark. Counterclaim, DN 10 at ¶ 62. However, the Foundation has not pleaded any extrinsic facts to support the conclusion that the public, or the buyers who heard the statement, understood it to carry a defamatory meaning and construed it that way. The Foundation argues that its credibility was harmed in the eyes of its realtor who had been told use of Sallie Road was permitted. Response, DN 16 at 14. But, it makes no argument and points to no allegation in its Counterclaim setting out extrinsic context or circumstance that suggests its credibility was harmed in the eyes of potential buyers or the public or that it suffered any other kind of reputational harm. Omitting such fact allegations means that the Foundation has failed to sufficiently plead defamation based on Bingham's disparagement of its easement rights.

### 2. Count 6 – Mismanagement of Assets

The Court finds that the Foundation's second defamation claim, Count 6, withstands Bingham's Rule 12(b) (6) challenge. The Foundation has alleged that Bingham "published articles and blog posts" which stated that it has "'mismanaged' Hopscotch House and 'underused and misused' its endowment." Counterclaim, DN 10 at ¶ 38 & ¶ 68. Further, according to the Foundation, "Bingham's statements have harmed [the Foundation's] reputation, including, but not limited to, among [the Foundation's] supporters and current and former beneficiaries." *Id.* at ¶ 70. Bingham argues that these allegations want sufficient detail because they fail to specify the content of Bingham's defamatory statements. Motion, DN 11-1 at 19. The Court disagrees. The use of quotation marks indicates that the Foundation has pleaded Bingham's exact words and those words impute dishonesty. Allegations of mismanaged assets and misuse of endowment funds suggest that

the Foundation cannot be trusted with donor's contributions, impugning its integrity and honesty and carrying connotations of deceit.

Next, Bingham argues that Count 6 must be dismissed because it rests on statements of opinion which are not actionable. *Id.* at 20. The Foundation counters that Bingham has misstated Kentucky law which holds that while pure opinion is not actionable, if a statement implies that its speaker's opinion is based on known but undisclosed facts, it can be actionable. Response, DN 16 at 14-15 (citing *Ramler v. Birkenhauer*, 684 S.W.3d 708 (Ky. App. 2024)). The Foundation is correct. Kentucky law is to that effect. Thus, the question becomes whether the allegations present statements that are "pure opinion" and thus fail to state a claim or if they present statements of "mixed opinion" that can be actionable.

"Pure opinion 'occurs when the maker of the comment states the facts on which he bases his opinion of the plaintiff and then expresses a comment as to the plaintiff's conduct, qualifications or character.'" *Ramler*, 684 S.W.3d at 719 (citation omitted). As alleged, Bingham's posted and published comments state conclusions but do not include any facts on which those conclusions of mismanagement and misuse are based. As such, the allegations do not present statements of "pure opinion." Thus, the question becomes whether they sufficiently allege an actionable "mixed type opinion." The Court finds that they do. The statements imply that Bingham has knowledge of underlying facts which justified her opinions. That is, the statements create a reasonable inference that Bingham knows of instances of asset mismanagement and endowment misuse which have taken place. Again, the imputation is that the Foundation, a non-profit, cannot be trusted and one should not contribute money or make any other donation to its cause. As such, the statements are capable of bearing a defamatory meaning and are actionable as a result. *Id.; Yancey v. Hamilton*,

19

786 S.W.2d 854, 857 (Ky. 1989) (an opinion that creates reasonable inference that undisclosed defamatory facts justify it is an actionable opinion).

**F. Private Nuisance – Count 7**

The Foundation maintains that Bingham is liable for creating a private nuisance because she (1) has prevented the Foundation from connecting its property to water lines and the internet and (2) permits hunting on her adjacent farmland which makes artists feel unsafe. Response, DN 16 at 16-17 (citing Counterclaim, DN 10 at ¶ 23 & ¶ 26). Bingham contends that these allegations do not state a nuisance claim. The Court agrees but not for the reasons advanced by Bingham.[2]

Under Kentucky law, nuisance consists of "that class of wrongs which arise from the unreasonable, unwarranted, or unlawful use by a person of his own property and produces such material annoyance, inconvenience, discomfort, or hurt that the law will presume a consequential damage." *City of Somerset v. Sears*, 313 Ky. 784, 233 S.W.2d 530, 532 (1950). Accordingly, a nuisance is "anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable." *Adams v. Hamilton Carhartt Overall Co.*, 293 Ky. 443, 169 S.W.2d 294, 295 (1943). Thus, the general rule is that "in order to be a nuisance the use of the property must disturb *physical* comfort or be offensive to *physical* senses." *Louisville v. Munro*, 475 S.W.2d 479, 482 (Ky. 1971) (emphasis in original). If the alleged nuisance causes only emotional upset, it is not actionable. *McCaw v. Harrison*, 259 S.W.2d 457 (Ky. 1953) (plaintiff's fear that cemetery might contaminate wells and reduce property value not actionable).

---

[2] Bingham contends that a private nuisance claim requires a physical invasion or touching upon property and no such invasion has been alleged. Motion, DN 11 at 21 (citing *Smith v. Carbide and Chem. Corp.*, 507 F.3d 372 (6th Cir. 2007)). That assertion is incorrect, mistakenly equating trespass with nuisance. They are distinct torts. Trespass requires actual physical invasion. Nuisance does not. Nuisance consists of using one's own property in such a manner as to interfere with or cause injury to the property, right, or interest of another. Hence, non-trespassory loud noises may constitute a nuisance but would not be a trespass. *Anderson*, 288 Ky. 501, 156 S.W.2d 857 (1941) (transformer humming).

Here, the Foundation has fallen short of stating a nuisance claim. The Foundation has alleged that Bingham's permitting hunting on her land *"**could*** result in crossfire across its property" and has caused some female artists to fear staying there. Counterclaim at ¶ 26, DN 10 at 14 (emphasis added). The Foundation has not alleged that dangerous crossfire has in fact occurred or has otherwise disturbed anyone's physical comfort. The Foundation also asserts that Bingham's refusal to grant an easement so that the retreat can run new fiber lines for internet access and have access to "modern water lines" has resulted in a basic lack of amenities that artists find "challenging." *Id.* at ¶ 23, DN 10 at 13. But there are no allegations that anyone's physical comfort is being disturbed by something that is offensive to the senses. *Cf. Anderson*, 288 Ky. 501, 156 S.W.2d 857 (loud noise may constitute a nuisance); *see also Associated Contractors Stone Co.*, 376 S.W.2d 316 (non-trespassory blasting that shook nearby homes constitutes nuisance).

The Foundation asserts that *Smith v. Carbide and Chem. Corp.*, 507 F.3d 372 (6th Cir. 2007) stands for the proposition that the loss of such conveniences constitutes an actionable nuisance. The Court disagrees. In *Smith*, the defendant had contaminated ground water, rendering the plaintiffs unable to use their water wells on which they had historically relied. *Id.* at 379. No like circumstance has been pleaded here. Instead, the Foundation has alleged only that it needs to truck in water to fill a cistern – a condition that has been true since it bought the property in 1987. As for the lack of a fiber-cable connection to the internet, such does not disturb one's physical comfort and rendering a vicinity less attractive does not state an actionable claim under Kentucky law. *See L.D. Pearson & Son v. Bonnie*, 209 Ky. 307, 272 S.W. 375 (1925) (people's reluctance to live next door to funeral home does not state action for private nuisance even though homes may lose value as result of undesirability).

## <u>CONCLUSION</u>

Construing the Counterclaim as a whole and drawing all reasonable inferences in favor of the Foundation, the Court finds that Counts 1, 3, 4 and 7 should be dismissed, and to the extent that it is founded Bingham's Verified Complaint, Count 2 should also be dismissed. Count 1 will be dismissed without prejudice. Count 2 will be partially dismissed with prejudice. Count 3 will be dismissed with prejudice to the extent that it is based on Bingham's *lis pendens*, and it will be dismissed without prejudice to the extent that it is based on Bingham's Verified Complaint. Counts 4 and 7 will be dismissed without prejudice. The counterclaims which survive Bingham's motion are Count 2 to the extent it is based on Bingham's *lis pendens* filing, Count 5 and Count 6. The Court will enter a separate order consistent with this Memorandum Opinion.

March 5, 2025



Charles R. Simpson III, Senior Judge
United States District Court

22