UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Electronically Filed*

| | | |
|---|---|---|
| SALLIE BINGHAM | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:24-cv-211-CRS |
| | ) | |
| KENTUCKY FOUNDATION FOR WOMEN, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>DEFENDANT'S MOTION TO DISQUALIFY COUNSEL</u>**

It recently came to the attention of the undersigned that Dentons Bingham Greenebaum LLP ("Dentons") almost certainly has a disqualifying conflict of interest in representing Plaintiff/Counterclaim-Defendant Sallie Bingham ("Bingham") in this matter. Prior to Dentons filing Bingham's Complaint in this case, Dentons served as the primary outside counsel for Defendant/Counterclaim-Plaintiff Kentucky Foundation for Women, Inc. ("KFW"), a small non-profit with minimal staff that employs no in-house attorneys. KFW went to Dentons with nearly every single need for legal advice for more than a decade, regardless of the subject matter, giving Dentons a sprawling view into KFW's confidential information. Critically, KFW sought and received privileged legal advice from Dentons on at least three topics that are now issues in this lawsuit, with one instance taking place a mere 24 days before the filing of Bingham's Complaint. Dentons abruptly, and without explanation, terminated KFW as a client only 11 days before the filing of that Complaint. Dentons did not provide any notification to KFW regarding this lawsuit, nor did it seek KFW's consent to represent a party asserting claims against KFW, violating Kentucky's Rules of Professional Conduct and warranting Dentons's disqualification. For the reasons set forth herein, KFW, by counsel, respectfully moves the Court to disqualify Dentons in

1

this matter and to order Dentons to compensate KFW for its legal fees and costs in bringing this motion and a related motion for protective order.

## FACTS

KFW is a Kentucky nonprofit corporation that is recognized as an exempt private foundation under section 501(c)(3) of the Internal Revenue Code of 1986, as amended. (LaRue Aff., Exh. A, ¶ 3.)  Since its formation, KFW has promoted "positive social change by supporting varied feminist expression in the arts."  (KFW's Counterclaims, D.N. 10, ¶ 16.)  KFW primarily has done so through issuing financial grants to Kentucky female artists.  (*Id.* ¶ 17.)

KFW is a relatively small organization.  At any given time over the past ten years, it has employed two to three full-time employees and approximately two to three part-time employees. (LaRue Aff., Exh. A, ¶ 5.)  Sharon LaRue ("LaRue") has served as KFW's Executive Director since 2014.  (*Id.* ¶ 2.)

In 1987, KFW used KFW assets to purchase a property called "Hopscotch House" that is at the heart of this lawsuit.  (KFW's Counterclaims, D.N. 10, ¶ 7.)  KFW eventually began using the Hopscotch House as a setting for retreats for female artists.  (*Id.* ¶ 22.)  This continued for several decades.  During those years, Bingham approached KFW at various times about purchasing Hopscotch House from KFW, obtaining a right of first refusal to purchase Hopscotch House, and having KFW place Hopscotch House in a conservation easement to prevent development near Bingham's personal real estate.  As years went on, interest in Hopscotch House from female artists declined, maintenance costs rose, and KFW rightfully explored selling the property.  Bingham filed suit in this case to stop that sale, with Dentons as her counsel.  Hopscotch House, how KFW acquired it, statements that Bingham made about KFW in response to KFW trying to sell

Hopscotch House, and disputes between Bingham and KFW related to Hopscotch House are now at the center of this lawsuit.

It might seem surprising, then, that Dentons had been KFW's long-time, primary outside counsel since before 2014, and potentially for much longer. (LaRue Aff. Exh. A, ¶¶ 2, 7.) Since at least 2014, KFW's primary contact at Dentons has been Brent Baughman ("Baughman"), who practices employment law. (*Id.* ¶ 8.) But KFW sought Dentons's advice on different matters that were not employment related, and Baughman would consult with other attorneys in his firm as needed on these other, non-employment issues. (*Id.*) Since LaRue became Executive Director in 2014, KFW's engagement with Dentons has been ongoing and served almost every need for legal advice that arose, from employment issues, tax laws, rules governing its non-profit status, IT, lease agreements, real estate, issues related to Hopscotch House, and more. (*Id.* ¶ 8) There was not any explicit limitation on Dentons's scope or length of representation; LaRue does not remember signing any engagement letters that restricted Dentons's services or that provided any specific endpoint for its representation. (*Id.*)

More than that, KFW specifically sought and received counsel from Dentons during the past six years on several matters that are now encompassed in this lawsuit. (*Id.* ¶ 9.) These topics included disagreements with Bingham regarding the use of her property surrounding Hopscotch House; Bingham's attempts to purchase Hopscotch House and to procure a right of first refusal for the purchase; and protecting KFW's reputation in response to defamatory statements made by Bingham (after she learned that KFW was selling Hopscotch House). (*Compare id.* ¶ 9, *with* KFW's Counterclaims, D.N. 10, ¶ 35, 37–38.) KFW shared privileged substantive information (which now relates to claims in this case) with Dentons so it could provide appropriate, well-informed advice. (LaRue Aff., Exh. A, ¶ 9.)

This occurred as recently as March 5, 2024.  (*Id.* ¶ 10.)  LaRue, on behalf of KFW, contacted Baughman to ask about one of the defamatory statements that is now a claim in this lawsuit.  (*Id.*)  Baughman asked to discuss this matter over the phone and specifically stated he needed background information from her.[1]  (*Id.*)  He and LaRue then spoke on the phone on March 5, 2024. (*Id.*) That conversation was substantive: LaRue discussed her question and potential outcomes in detail with Baughman and sought his advice on KFW's options.  (*Id.*)  Baughman concluded the call by saying he would look further into the issue and follow-up with her.  (*Id.*)

But that never happened.  Instead, Baughman's next contact with KFW occurred on March 18, 2024 when he abruptly terminated Dentons's longstanding representation of KFW.  (*Id.* ¶ 11.) KFW had absolutely no warning that this was coming, and Dentons provided no explanation for what prompted the termination.

*This timeline warrants emphasis: on March 5, 2024, Dentons had substantive communications with its client, KFW,  about privileged information relating to a claim that is part of this lawsuit; 13 days later, on March 18, 2024, Dentons terminated its very long relationship with KFW without stating a reason and while KFW was still awaiting advice from Baughman; and 11 days later, on March 29, 2024, Dentons initiated this lawsuit against KFW on behalf of Bingham.*

Dentons did not advise KFW that it anticipated filing this matter against KFW.  It did not ask KFW for its consent to represent Bingham, nor did it provide any written notice that Baughman

---

[1] As explained in detail below, parties moving to disqualify are not required to share confidential information through their motions, out of concern for revealing privileged information to an opposing party and conflicted counsel. *See Bowers v. Ophthalmology Grp.*, 733 F.3d 647, 651 (6th Cir. 2013).  However, KFW has numerous emails that substantiate the factual information in this motion and LaRue's affidavit and can provide them to the Court under appropriate protections such as an *in camera*, *ex parte* review.

and others who had previously worked for KFW were "screened" away from this dispute. (*See* LaRue Aff., Exh. A, ¶¶ 16–18.)

KFW turned to new legal counsel in order to defend it in this lawsuit and retained Wyatt, Tarrant & Combs, LLP ("Wyatt"). (*Id.* ¶ 14.) KFW responded to Bingham's Complaint on April 24, 2024, and asserted numerous counterclaims. (KFW's Ans. and Counterclaims, D.N. 10.) Bingham then moved to dismiss all of KFW's counterclaims. (D.N. 11.) The matter laid dormant while that motion was pending. There was not any substantive action until the Court issued its Memorandum Opinion and Order on March 6, 2025. (D.N. 25.)

Soon after, on March 13, 2025, KFW mentioned to the undersigned for the first time that Dentons had previously represented KFW. (LaRue Aff., Exh. A, ¶ 14.) The topic arose only by happenstance, (*id.*), but the undersigned quickly learned the nature and length of the prior relationship. With no legal training, Dentons's former representation had not seemed relevant to KFW staff or something they needed to discuss with current counsel. (*Id.* ¶¶ 4, 5, 14–15.) KFW did not understand any of the rights it had as a former client of Dentons or the implications of a conflict of interest, and it certainly did not know that it could move to disqualify Dentons. (*Id.* ¶ 15.) None of the employees at KFW are attorneys. (*Id.* ¶¶ 4–5.)

Two business days later, on March 17, 2025, the undersigned contacted Dentons. (Exh. B, 3/17/2025 email.) He informed them that this issue had just come to his attention and, as he then understood it, seemingly invoked several Rules of Professional Conduct, specifically Rules 1.7, 1.8, and 1.9. He acknowledged that there could be more to their side of the story, though, and asked them to explain. (*Id.*)

In response, Dentons essentially brushed away the undersigned's concerns and shifted the blame to everyone *but* Dentons. It first accused the undersigned—baselessly—of strategically

raising this issue "on the heels of the Court's orders dismissing in large part KFW's purported counterclaims . . . ." (Exh. C, 3/20/2025 letter.)  Dentons then went on to say that, somehow, it did not believe there was any conflict of interest requiring it to obtain KFW's consent.  (*Id.*)  Dentons acknowledged that Baughman and other attorneys provided advice to KFW but claimed— falsely[2]—that those representations were limited to employment matters.  (*Id.*)  Additionally, Dentons acknowledged that it had evaluated the possibility of a conflict at the outset of the litigation.  (*Id.*)  But, even though they understood there was a potential conflict, they still did not seek KFW's consent for a waiver of the conflict.  (*Id.* ("we . . . after consulting with our firm's General Counsel, stand by *our initial conclusion* that there is no conflict of interest under the Kentucky Rules of Professional Conduct that precludes our firm from representing Bingham in connection with her pending claims against KFW, or requires us to obtain KFW's consent") (emphasis added).)

Dentons then attempted to rewrite the narrative concerning the March 5, 2024 conversation between Baughman and LaRue.  Dentons acknowledged that LaRue emailed Baughman regarding "certain statements allegedly made by Ms. Bingham."  (*Id.*)  But Dentons self-servingly minimized Baughman's communications with KFW, alleging that Baughman merely informed LaRue "that he could not offer related advice to KFW."[3]  (*Id.*)  Dentons then explained that its abrupt termination letter on March 18, 2024 sufficiently converted KFW into Dentons's former client.  (*Id.* ("our firm plainly had no attorney-client relationship with KFW at the time it filed the pending

---

[2] As stated above and discussed in more detail below, the Sixth Circuit makes clear that a movant is not required to provide confidential evidence in a motion to disqualify.  Nevertheless, KFW has numerous documents showing the wide-ranging issues upon which Dentons advised KFW, which the Court could review *ex parte* and *in camera* if Dentons persists in its false description.

[3] This claim, too, is inconsistent with documents that KFW can provide to the Court *ex parte* and *in camera* if Dentons continues to minimize the communications.

lawsuit on behalf of Ms. Bingham").)  As to the other Rules of Professional Conduct identified by the undersigned, Dentons simply stated that neither Baughman nor any other attorney at Dentons had represented KFW in "the same or a substantially related matter" and that Baughman "is not participating in the pending lawsuit."  (*Id.*)  Dentons then said that none of its attorneys were "aware of any information acquired during our firm's previous consultations with KFW . . . ." (*Id.*) Dentons did *not* say that Baughman or any other attorney were screened off from participating in the lawsuit, or that any information from Dentons's prior representation was unavailable to Dentons's counsel of record—they just were not "aware" of any.

Dentons then concluded its letter by blaming its former client, KFW.  It ignored all of its own professional responsibilities before brazenly concluding that KFW had somehow waived the conflict—an issue that Dentons never bothered identifying or explaining to its client in the first place.  (*Id.*)

In response, the undersigned more specifically asked Dentons if it "possess[ed] any documents that would mitigate against a conflict."  (Exh. B, 3/21/2025 email.)  Such a document might have been a written waiver of conflicts from KFW.  Dentons provided no such document. (*Id.*, 3/24/2025 email.)

## <u>ARGUMENT</u>

Dentons has ignored its obligations to KFW as a then-current client, and as a now-former client, under the Kentucky Rules of Professional Conduct.  It must not be permitted to represent Bingham in a matter that is directly adverse to its long-time client, KFW, and that concerns specific issues on which Dentons previously represented KFW.

Determining whether to disqualify an attorney requires balancing "policy interests of preserving client confidences and of permitting a party to retain counsel of its choice." *Dirksing v.*

*Safeco Ins. Co. of Illinois*, 544 F. Supp. 3d 767, 770 (E.D. Ky. 2021) (internal quotation omitted). The court should balance the safeguarding of the judicial process along with "the interests of each party to the litigation." *Id.* (internal quotation omitted).

While ethical rules regarding practice in federal courts are ultimately questions of federal law, courts look to the state rules of professional conduct. *Id.*; *see also* L.R. 83.3(c) (authorizing courts in the Eastern and Western Districts to discipline attorneys for violating the Kentucky Rules of Professional Conduct). Here, Rules 1.7, 1.9, and 1.10 of the Kentucky Rules of Professional Conduct require disqualification because Dentons violated its obligations to a "current client" at the time it began its representation of Bingham in this matter and its obligations to a "former client" since that time.

## I. DISQUALIFICATION IS REQUIRED BECAUSE DENTONS BREACHED ITS OBLIGATIONS TO A "CURRENT CLIENT" UNDER SCR 3.130(1.7).

Rule 1.7 governs conflict of interests among current clients and states in relevant part:

> (a)  Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> > 1.  The representation of one client will be directly adverse to another client; . . . .

S. Ct. R. 3.130(1.7)(a)(1). Rule 1.7 allows attorneys to represent current clients even when a conflict of interest exists *but only if* the attorney takes the steps outlined in sub-part (b):

> (b)  Notwithstanding paragraph (a), a lawyer may represent a client if:
>
> > 1.  the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> > 2.  the representation is not prohibited by law;
> > 3.  *the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation* or other proceeding before a tribunal; and

8

> 4. *each affected client gives informed consent, confirmed in writing. The consultation shall include an explanation of the implications of the common representation and the advantages and risks involved.*

S. Ct. R. 3.130(1.7)(b) (emphases added). "Application of [Rule 1.7] to the present case is essentially mechanical." *El Camino Res., Ltd. v. Huntington Nat. Bank*, 623 F. Supp. 2d 863, 877 (W.D. Mich. 2007) (applying Michigan's analogous rule to a case where several of a firm's clients were involved as opposing parties). But this rule nonetheless has broad-sweeping implications:

> Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's *informed consent*. Thus, *absent consent*, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated.

S. Ct. R. 3.130(1.7) cmt. 6 (emphases added).

Additionally, Rule 1.10 states that, for lawyers associated in a firm, none of them can knowingly represent a client "when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, . . . ." S. Ct. R. 3.130(1.10)(a). Firms can avoid disqualification if (i) the disqualification of one of its attorneys is based on representation of a *former* client; (ii) the disqualified attorney is screened from participation in the matter; and (iii) written notice is provided to the former client. S. Ct. R. 3.130(1.10)(d). Rule 1.10 does not include a process for law firms to avoid imputation of disqualification for conflicts with current clients.

It is undisputed that Rule 1.7 applied to KFW as a current client of Dentons until at least March 18, 2024. With Dentons filing Bingham's Complaint on March 29, 2024, it is highly likely that Dentons was already representing Bingham with respect to this matter before March 18, 2024. It is difficult to imagine that—within a 10.5 day period beginning on March 18th—Bingham first approached Dentons about filing this lawsuit, consulted with Dentons sufficiently to allow Dentons

to prepare the Complaint, and then Dentons prepared and filed the Complaint.  Such processes typically take longer.  And, if that actually occurred, Dentons should have explained that to the undersigned when he originally asked.  (*See* Exh. C.)

Moreover, the abrupt timing of Dentons's termination letter, and the utter lack of explanation in it, strongly suggest that Dentons had consulted with Bingham about her dispute prior to sending the letter—at a time when KFW was a current client, had recently communicated with Baughman about a matter that is part of this case, and was awaiting legal advice following that communication—and that the Bingham representation was in fact the reason for terminating KFW.  Otherwise, Dentons's termination would make no sense.  It would have been terminating a long-time client—and long-time source of revenue—for no reason just days before it coincidentally took on a representation of an adverse party.

Conflicts and disqualification for Baughman and the other attorneys who worked for KFW were imputed to Dentons overall pursuant to Rule 1.10.[4]  *See* S. Ct. R. 3.130(1.10).

While Dentons could cure certain conflicts under Rule 1.7(b), its lawsuit against KFW is not one of those exceptions.  *See id.* (1.7)(b)(3) (stating that a conflict can be cured if it does *not* involve asserting a claim against another client.)  Further, at no point did Dentons seek, or did KFW provide, informed consent, let alone in writing.  *See id.* (b)(4)*; see also* Exh. C (stating that Dentons did not need to receive KFW's consent).  Under a direct application of Rule 1.7, then,

---

[4] While Baughman was KFW's primary contact, he collaborated with other Dentons attorneys as needed.  (LaRue Aff., Exh. A, ¶ 8.)  All of these other attorneys would also be disqualified—but KFW does not know who they are. Dentons's letter suggested that these attorneys left Dentons "years ago . . . ." (Exh. C.)  But Dentons offered zero supporting facts to substantiate that statement.  They did not identify when those attorneys purportedly left, or even provide their names.

Dentons was clearly operating under a concurrent conflict of interest by pursuing claims that were directly adverse to KFW.  Its representation of Bingham in this matter was prohibited.

As mentioned above, Dentons's attempt to terminate its relationship shortly before filing a lawsuit directly adverse to KFW suggests that Dentons was trying to avoid Rule 1.7 and its clear prohibition against suing a current client.  Dentons dropped KFW as a client and now argues that "our firm had no attorney-client relationship with KFW at the time it filed the pending lawsuit on behalf of Bingham, . . . ."  (Exh. C.)  But this tactical shuffling of clients is soundly rejected by courts.

Attorneys cannot drop clients like a "hot potato" simply because a more attractive and/or lucrative opportunity comes along.  "The courts universally hold that a law firm will not be allowed to drop a client in order to resolve a direct conflict of interest, thereby turning a present client into a former client." *El Camino Resources, Ltd.*, 623 F. Supp. 2d at 877 (collecting cases).

> Pursuant to this universal rule, the status of the attorney/client relationship is assessed at the time the conflict arises, not at the time the motion to disqualify is presented to the court. If this was not the case, the challenged attorney could always convert a present client into a "former client" by choosing when to cease to represent the disfavored client. This unilateral abrogation of the duty of loyalty cures nothing, but serves to make matters worse.

*Id.* at 878 (internal citation and quotations omitted).

The Restatement of the Law Governing Lawyers agrees: withdrawal by an attorney is appropriate and converts a client into a "former" client when the representation ends "at a point that the client and lawyer had contemplated as the end of the representation . . . ."  Restatement (Third) of the Law Governing Lawyers § 132 (cmt. c) (2024 update).  But the attorney cannot "transform[]" a *present*-client conflict into a *former*-client conflict by withdrawing from current representation simply because it is convenient to do so.  *Id.*; *see also* KBA Ethics Op., E-443 (Nov.

17, 2017) (stating that, if a firm inherits a matter adverse to a current client through a merger, "[t]he firm may not drop a client without its consent to cure a conflict.").

Dentons violated this "universal rule." *See El Camino Resources, Ltd.*, 623 F. Supp. 2d at 878. The March 18th termination letter was not the natural end that KFW and Dentons "had contemplated"—it was simply a convenient one for Dentons. KFW is not aware of any engagement letters that created boundaries for or otherwise limited KFW's relationship with Dentons. (LaRue Aff., Exh. A, ¶ 8.) KFW considered their relationship as ongoing: this is evidenced by the fact that KFW contacted Dentons for legal advice as recently as March 5, 2024. (*Id.*, ¶¶ 8, 10.) It is further evidenced by Dentons's March 18, 2024 letter. If there was not an ongoing relationship, there would have been no need for that letter. Dentons does not dispute that it represented KFW, nor does it dispute that its representation was active until March 18, 2024. (Exh. C.) It tries to *minimize* that ongoing relationship—but it does not deny it existed. (*See id.*)

And, despite Dentons's attempt to rewrite the narrative, Dentons, through Baughman, agreed to have a privileged conversation with KFW and to obtain its confidential information about an issue that is now part of this case. (LaRue Aff. ¶ ¶ 10.) Their attorney-client relationship was not just on-going prior to March 18, it was recently active and in-process.

Dentons unilaterally terminated its relationship with KFW at a time that the parties had not contemplated. Dentons's actions in terminating its relationship with KFW so it could pursue litigation against KFW on behalf of another client cannot successfully remove it from Rule 1.7.

Because Dentons violated its duty of loyalty to KFW under Rule 1.7, it should be disqualified from representing Bingham in this matter.

## II. DISQUALIFICATION IS REQUIRED BECAUSE DENTONS BREACHED ITS OBLIGATIONS TO A "FORMER CLIENT" UNDER SCR 3.130(1.9(A)).

Even if Dentons could have successfully ended its relationship with KFW prior to beginning one with Bingham for this lawsuit, Dentons's actions still violated its ethical obligations to KFW inasmuch as KFW was a former client because this lawsuit involves issues and claims that are the "same" or "substantially similar" to Dentons's prior representation of KFW.  The Kentucky Rules of Professional Conduct explain an attorney's responsibilities to its former clients under Rule 1.9.

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

S. Ct. R. 3.130(1.9)(a).  Conflicts under Rule 1.9 for one attorney in a firm are imputed to the entire firm unless the disqualified attorney is screened from participation in the matter *and* written notice is provided to the former client.  S. Ct. R. 3.130(1.10)(a), (d).

The Sixth Circuit uses a three-part test to determine if disqualification is warranted based on a relationship with a former client: (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney at issue; (2) the subject matter of those relationships is "substantially related"; and (3) the attorney acquired confidential information from the party seeking disqualification.  *In re Valley-Vulcan Mold Co.*, 5 F. App'x 396, 401 (6th Cir. 2001) (citing *Dana Corp. v. Blue Cross & Blue Shield Mut.*, 900 F.2d 882, 889 (6th Cir. 1990)).  In a decision applying Kentucky Rule 1.9 and disqualifying counsel as conflicted, the Sixth Circuit has determined that these factors are "essentially the same" as Rule 1.9(a).  *Bowers v. Ophthalmology Grp.*, 733 F.3d 647, 651 (6th Cir. 2013).

Multiple issues related to this consideration are not up for debate: Dentons had an attorney-client relationship with KFW for at least 10 years prior to March 18, 2024; Bingham's interests are directly adverse to KFW's interests in this lawsuit; Dentons did not receive (or even ask for)

13

KFW's consent in representing Bingham in this matter; and Dentons did not provide notice to KFW that any of its attorneys had been screened from this matter. (*Id.* ¶ 16–18; Exh. C.) There is also reason to believe that Dentons did not actually screen those conflicted attorneys. Dentons did not inform the undersigned of such a screening when it had the chance to do so in its March 20, 2025 letter. Under Rule 1.10(b), the disqualification of Baughman or any attorney who provided legal counsel (directly or indirectly through Baughman) is imputed to Dentons overall.

The issues for the Court, then, are whether this lawsuit is the "substantially related" to Dentons's prior representation of KFW and whether Dentons received confidential information from KFW in that representation. *See In re Valley Vulcan Mold Co.*, 5 F. App'x at 401.

To analyze the "substantially related" question, the *Bowers* court looked to the comments to Rule 1.9, which states that "[m]atters are 'substantially related' . . . if they involve the same transaction or legal dispute or if there is otherwise a substantial risk that confidential factual information as would have normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." *Bowers*, 733 F.3d at 652 (quoting cmt. 3 to Rule 1.9) (second alteration in original). It also looked to an opinion from a district court in Kansas that said:

> In determining whether a substantial relationship exists, the court evaluates the similarities between the factual bases of the two representations. A commonality of legal claims or issues is not required. At a functional level, the inquiry is whether the attorneys were trying to acquire information vitally related to the subject matter of the pending litigation. To accomplish this inquiry, the court must be able to reconstruct the attorney's representation of the former client, *to infer* what confidential information could have been imparted in that representation, and to decide whether that information has any relevance to the attorney's representation of the current client. What confidential information *could have been* imparted involves considering what information and facts *ought to have been or would typically* be disclosed in such a relationship. Consequently, the representations are substantially related if they

14

> involve the same client and the matters or transactions in question
> are relevantly interconnected or reveal the client's pattern of
> conduct.

*Id.* (quoting *Koch v. Koch Indus*, 798 F. Supp. 1525, 1536 (D. Kan. 1992)) (emphases added).

Conducting this analysis is sanitized, to an extent, because former clients are not required to reveal confidential information to establish that there is a substantial risk the lawyer has confidential information it can use in the subsequent matter. *See id.* at 651. "Given this limitation, we must determine whether matters are 'substantially related' while avoiding specific inquiries into the attorney's representation of a now-adverse client." *Id.* at 652. "[T]he court must look to the general type of information that the potentially conflicted lawyer would have been exposed to in a normal or typical representation of the type that occurred with the now-adverse client." *Id.* (internal citation omitted). This analysis results in the final two *Dana* prongs identified above (whether the matter is substantially related and whether the attorney received confidential information) being "essentially . . . interdependent on one another." *Gibson v. Wikeley, Inc.*, 5:23-cv-116-GFVT-MAS, 2023 WL 4934988, at *4 (E.D. Ky. Aug. 2, 2023) (internal quotation omitted).

While the Sixth Circuit acknowledged this inquiry "has its difficulties," *see Bowers*, 733 F.3d at 652, it is easily answered in this matter. LaRue's affidavit explicitly states that she sought Baughman's advice (and indirectly his colleagues') on issues that are part of this lawsuit. She consulted with him and other Dentons attorneys since 2018 on issues that included: disagreements between KFW and Bingham regarding the use of her property surrounding Hopscotch House; Bingham's attempt to secure a right of first refusal to purchase Hopscotch House; and protecting KFW's reputation following defamatory statements made by Bingham (which she made in

response to KFW listing Hopscotch House for sale).[5]  (LaRue Aff., Exh. A, ¶ 9; *see also*; Counterclaims, D.N. 10, ¶ 35, 37–38.)

All of these communications "are relevantly interconnected . . ." to Bingham's and KFW's claims in this lawsuit.  *See Bowers,* 733 F.3d at 652 (quoting *Koch*, 798 F. Supp. at 1536.)  These privileged communications would also reveal KFW's "pattern of conduct" regarding its interpretation of and proposed plans for addressing these same issues.  *See id.*  That information could advance Bingham's position in this lawsuit.

In the *Bowers* decision, the Sixth Circuit conducted the kind of hypothetical analysis that is required when a prior representation is not directly or obviously a part of the current case, and it disqualified counsel because the type of prior representation in that case would have necessarily involved the sharing of information that would be relevant the current representation in that case. *Id.* at 653–54.  That kind of hypothetical analysis is not as necessary here where Dentons's prior representation of KFW included at least three matters directly invoked in the parties' pleadings. However, the Court may still follow the roadmap in *Bowers* to discern that plenty of confidential, relevant information "could have" or "would typically be disclosed" by KFW to Dentons in their prior representations—all of them, not just the three explicitly at issue in this case—that would be relevant in this lawsuit.  *Id.* at 652 (quoting *Koch*, 798 F. Supp. at 1536).

Therefore, under Rule 1.9(a) and the *Dana* factors, Dentons's representation of Bingham in this dispute creates an improper conflict of interest.  Dentons did not provide any statement under Rule 1.10(b) that explains Baughman or other attorneys were screened off from the matter and that otherwise notified KFW of Dentons's involvement in this lawsuit.  Hence, because

---

[5] As before, KFW has records proving that KFW communicated with its longtime attorneys on these issues, which the Court can review *ex parte* and *in camera* if Dentons continues to falsely claim otherwise.

Baughman and other undisclosed Dentons attorneys are disqualified, all of Dentons is disqualified. *See* S. Ct. R. 1.10(a); *see also Dirksing*, 544 F. Supp. 3d at 773 ("Harsh as the result may be, Allouch's initial involvement and Graydon's failure to follow the requirements outlined under Rule 1.10 compels no other result."); *Hometown Pizza, Inc. v. Hometown Pizza II, LLC*, 3:22-cv-20-RGJ, 2022 WL 2392642, at *4 (W.D. Ky. July 1, 2022) (imputing one attorney's disqualification to her firm under Rule 1.10(a)).

For the foregoing reasons, Dentons has a conflict of interest preventing it from representing Bingham in this matter. Dentons should therefore be disqualified.

## III.  **DENTONS SHOULD COMPENSATE KFW FOR ITS LEGAL FEES AND COSTS FOR BRINGING THIS MOTION.**

The Court should issue sanctions by requiring Dentons to reimburse KFW's attorney fees and costs incurred through bringing this motion and a related motion for protective order. Neither motion would have been necessary but for Dentons's actions. "It is well established that courts possess inherent authority to impose sanctions on attorneys appearing before them. This includes the power to sanction attorneys for violations of a state's ethical rules." *Archer Systems, LLC v. Rawlings & Assocs. PLLC*, 3:23-cv-242-RGJ, 2024 WL 3585143 at *10 (W.D. Ky. July 30, 2024) (internal citations omitted).

Sanctions are appropriate in this case first and foremost because KFW, a small non-profit with no in-house attorneys, should not be financially injured by enforcing its rights against its former legal counsel—rights about which Dentons should have advised KFW in the first place. Moreover, the conflicts that Dentons faced appear to have been clear and egregious, yet Dentons acted through conscious, calculated decisions to ignore the conflicts. Dentons consulted its general counsel about a possible conflict of interest at the outset of its representation of Bingham in this case. The record strongly suggests that Dentons did this while KFW was still a current client. Yet

17

Dentons did not ask KFW for its consent. It did not refer Bingham to a different law firm. It appears to have done what courts universally prohibit—dropping KFW as a client to try to avoid a conflict. *El Camino Resources, Ltd.*, 623 F. Supp. 2d at 877 (collecting cases). Because Dentons would not honor KFW's rights, KFW was left to enforce those rights through this motion.

Additionally, even if Dentons were to produce documentation to the Court that mitigates its conflicts, Dentons should still be responsible for paying KFW's legal fees and costs in bringing this motion. KFW's counsel promptly raised this issue with Dentons. The undersigned contacted Dentons on March 17, 2025—two business days after KFW first mentioned it to counsel. (*See* LaRue Aff., Exh. A, ¶ 15; Exh. B, 3/17/2025.) The undersigned identified his concerns to Dentons, asked Dentons to respond by explaining its position on the issue, and asked not once but twice for information and documentation that could obviate the need for this motion. Dentons provided no information (other than superficial denials) or documentation in response. KFW has no reason to believe that Dentons could produce such documentation or information to the Court. But, if it did, it should have first presented that information and/or documents to the undersigned in order to avoid this motion. Its refusal to do so should result in Dentons compensating KFW for the costs of brining this motion.

KFW should not have been put in this position. It was owed numerous considerations under the Rules of Professional Conduct but received none of them. Dentons failed to uphold its responsibilities as KFW's counsel and that warrants sanctions, even if they are not disqualified.

## IV.    <u>KFW DID NOT WAIVE ITS RIGHT TO MOVE TO DISQUALIFY DENTONS</u>.

Dentons has incorrectly argued to KFW that KFW waived this conflict of interest. (*See* Exh. C.) It is possible to waive a party's right to disqualify conflicted counsel the party does so *knowingly*. *See In re Valley-Vulcan Mold Co.*, 5 Fed. App'x at 401 ("It is well settled that a former

client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who *knowingly* refrains from asserting it promptly is deemed to have waived that right." (internal quotation omitted and emphasis added)). But that simply did not happen here.

KFW did not, and could not, knowingly waive the conflict of interest. As explained in LaRue's affidavit, no one at KFW understood the implications of Dentons's prior representation vis a vis this lawsuit. (LaRue Aff., Exh. A, ¶ 14–15.) None of KFW's employees are attorneys. (*Id.* ¶¶ 4–5.) It did not understand that it had any rights to (i) receive a written notification and an assurance that its confidential information was protected, or (ii) consent in writing to Dentons's representation of Bingham in this suit. *See* S. Ct. R. 3.130 (1.7)(b), (1.9)(a), (1.10)(b). KFW also had no idea that, in general, attorneys and their firms are not allowed to represent adverse clients in the same matters. *See id.* (1.7)(b)(3). Hence, KFW could not "knowingly" waive a right that it did not know existed.

KFW was not aware of its rights until it unintentionally raised this issue with its current counsel. Then, KFW moved swiftly to notify Dentons of its concern and to ask Dentons for more information. After Dentons stonewalled those efforts, KFW promptly moved to disqualify. KFW has not, in any way, engaged in delay tactics.

Nothing in this chain of events establishes waiver. This timeline is not similar to other cases in this Circuit where courts determined that parties had waived their ability to disqualify former counsel. *See In re Valley-Vulcan Mold Co.*, 5 Fed. App'x at 401 (holding a party waived its right to disqualify when it "employ[ed] delay tactics" by waiting until less than a week before trial); *Lani on behalf of Schiller Kessler & Gomez, PLLC v. Schiller Kessler & Gomez, PLC*, 3:16-cv-00018-CRS, 2017 WL 938327, at *3 (W.D. Ky. Mar. 9, 2017) (holding a party waived its right to disqualify counsel after the party mentioned disqualification in one motion before then

engaging in multiple other kinds of motion practice and hearings without moving to disqualify for over one year); *Swilley v. Tipton*, No. 04-cv-638-KKC, 2007 WL 316951, at *7 (E.D. Ky. Jan. 30, 2007) (holding that a party, who was an attorney herself, waived her right to disqualify counsel after failing to promptly raising it in a state case and then filing a separate federal action against the conflicted lawyer at issue). KFW never acknowledged to the Court that this issue existed before sitting on its rights for over a year. *See Lani*, 2017 WL 938327, at *3. And KFW is not a party that could have plausibly understood this issue without the assistance of counsel. *See Swilley*, 2007 WL 316951, at *7. KFW moved to disqualify in less than one month after informing its counsel.

Furthermore, there is no overriding prejudice to Bingham here. While this matter has technically been pending for a year, nearly nothing substantive has occurred during this time. The parties only recently completed their full Rule 26(f) conference on March 26, 2025, and only one set of written discovery has been served (which Bingham served after knowing that KFW was investigating this motion). There is no a trial date yet, let alone any other kind of deadlines. KFW is also moving to stay discovery while this disqualification motion is pending. If granted, the parties will not be able to conduct any discovery until this issue is decided.

KFW, on the other hand, has been severely prejudiced by Dentons's actions. Interestingly, Dentons's termination letter informed KFW that terminating its representation would not prejudice KFW. That statement failed to account for how significantly KFW relied on Dentons. Because of the length and comprehensive scope of its relationship with Dentons, and because no employee or staff member has been involved with KFW nearly as long as Dentons had been, KFW relied on Dentons for its institutional memory and knowledge of past strategies and organizational decisions. (*Id.* ¶ 19.) Losing that relationship has caused significant detriment to KFW, especially as it finds

itself defending against a lawsuit that involves past events that Dentons was involved in but that no current KFW employee or board member was. (*Id.* ¶ 19.) As if that were not prejudice enough, Dentons initiated this lawsuit on March 29, 2024 as *Bingham's* counsel, (*see* Compl., D.N. 1.), denying KFW of its institutional knowledge and putting it in the hands of the party suing KFW.

Moreover, the length of time in which KFW raised the conflict was largely of Dentons's making. Dentons never advised KFW about conflicts and their implications. It never informed KFW of the possible conflict with Bingham or sought KFW's consent. If it had, KFW could have raised this issue sooner. A client, especially a small non-profit with no in-house attorneys, must be able to rely on its outside counsel to soundly advise it on matters related to the firm's representation of the client. Dentons did not live up to its obligations in that respect. Rather, it consciously avoided them. Thus, Dentons cannot claim a purported waiver that it would have caused.

For these reasons, KFW did not waive its right to seek disqualification of Dentons based on this conflict of interest. KFW is not asking at this time for a hearing on this motion but reserves the right to do so.

## **CONCLUSION**

"There are no small or unimportant clients." *El Camino Res., Ltd.*, 623 F. Supp. 2d at 877. KFW was a long-standing client of Dentons. It regularly sought and received legal advice from Dentons on a number of issues, some of which are now being litigated in this case. While Dentons attempted to rewrite this relationship, it cannot change the fact that—as a client—KFW has rights associated with that relationship. Dentons's representation of Bingham in this matter violates the Kentucky Rules of Professional Conduct. For the reasons stated herein, Dentons should be

21

disqualified and ordered to pay KFW for its legal fees and costs in bringing this motion and the related motion for protective order.

Respectfully submitted,

*/s/ Matthew R. Palmer-Ball*
Matthew R. Palmer-Ball
Victoria Boland Fuller
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, KY  40202
502.589.5235
mpalmerball@wyattfirm.com
vfuller@wyattfirm.com

*Counsel for Defendant and Counterclaim-Plaintiff Kentucky Foundation for Women, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2025, I filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Matthew R. Palmer-Ball*
Matthew R. Palmer-Ball